DOROTHY-BILL MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 19773. Promulgated April 8, 1931.

*Tom F. Carey, C. P. A.,* and *C. F. Miller, Esq.,* for the petitioner.
*L. A. Luce, Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has asserted a deficiency in income tax
for 1923 in the amount of $766.45. The petitioner alleges (1) that
it is entitled to deductions for depletion based on a leasehold cost
far in excess of that used by the respondent; and (2) that it sus-
tained a net loss for each of the years 1921 and 1922 which should
be carried forward and deducted from income for the taxable year.

The respondent alleged affirmatively at the hearing that he has
allowed a deduction for depreciation in excess of that actually sus-
tained by $1,611.38, and moves that the deficiency determined be
increased accordingly.

All of the material facts are alleged in the petition and admitted
in the answer, leaving for determination only the cost of a certain
mining property for purposes of depletion.

The petitioner is an Oklahoma corporation organized in January,
1918, to engage in the operation of a lead and zinc mine. During
the taxable year it operated two mines, known as Dorothy Bill Mine
No. 1 and Dorothy Bill Mine No. 2.

In the fall of 1917, three individuals, J. R. Cole, Jr., J. H. Mat-
thews, and W. A. Easley, secured an option to purchase a mining
lease on 40 acres of land in Ottawa County, Oklahoma, for a price of
$65,000. On January 10, 1918, after thoroughly prospecting the
property, they exercised their option and paid to the Boston-Miami
Royalty Company $65,000 in cash, securing a lease on a 15 per cent
royalty basis. On the same date Cole, Matthews, and Easley entered
into the following contract with petitioner:

WHEREAS, on January 10, 1918, the Boston-Miami Royalty Company, a corpo-
ration, entered into a lead and zinc mining lease with J. R. Cole, Jr., J. H.
Matthews and W. A. Easley, for lead and zinc mining purposes, and covering
the SE/4 of the NW/4 of Section 20, Township 29, Range 23 East, I. M. Ottawa
County, Oklahoma, and covering a period of time expiring the 2nd day of
September, 1922; and

WHEREAS, the said J. R. Cole, Jr., J. H. Matthews and W. A. Easley are now
the owners and holders of said lease,

Now, THEREFORE, in consideration of the sum of One Dollar ($1.00) in hand
paid, the receipt whereof is hereby acknowledged, and in further consideration
of the issuing and delivering to the said Cole, Matthews and Easley each,
150,000 shares of the capital stock of the Dorothy-Bill Mining Company, a

corporation, organized under and by virtue of the laws of the State of Oklahoma, and the payment to the said J. R. Cole, Jr., J. H. Matthews and W. A. Easley, of 20 per cent of the gross proceeds of the lead and zinc mined and saved on the above described land, the said J. R. Cole, Jr., J. H. Matthews and W. A. Easley do hereby agree and bind themselves to execute a lease, in the form of the lease hereto attached and marked Exhibit "A", to the said Dorothy-Bill Mining Company and expiring the 15th day of August, 1922, and they do agree and bind themselves to erect upon said lease, one lead and zinc concentrating plant of modern design and construction, of at least 1,000-ton capacity every twenty-four hours, and to complete same within seven (7) months from December 15th, 1917, and to deliver said lease and plant completed to the said Dorothy-Bill Mining Company on or before the expiration of said time.

IN WITNESS WHEREOF we have hereunto set our hand this 10 day of January, 1918.

The concentration plant was completed early in June, 1918, at a cost of $134,235.05 and, together with the lease, on which a mine shaft had been sunk through the ore body, was transferred to the petitioner by assignment dated June 29, 1918. The property is hereinafter referred to as petitioner's Mine No. 1. Each of the individuals or his nominee received 150,000 shares of petitioner's capital stock, which constituted the total stock outstanding.

During 1918, Cole and Matthews sold 17,000 shares and 96,200 shares, respectively, of the stock received. All of Cole's stock was sold at $1 per share during February, March, and April. Matthews sold 42,930 shares prior to May 1, 1918, at $1 per share and 53,270 shares during the period from May to September, 1918, at $2 per share.

The respondent has computed depreciation and depletion of petitioner's properties for the years 1921, 1922, and 1923 by the so-called unit-of-production method and has used the cost of one ton of concentrates in the ore body as the basis therefor. The petitioner agrees that this is the correct method and contends that any recomputation of depletion deductions should be made on the same basis.

After careful consideration of the evidence, which is made up of the opinions of expert witnesses as to the value of the lease and testimony establishing the price received for the stock within a few months after incorporation and shortly after the lease was paid in for stock, we conclude that the stock of the petitioner was worth par when exchanged for the lease and concentration plant. The parties agree that the cost of the plant was $134,235.05. Subtracting this amount from $450,000, the cost of the entire property, gives a remainder of $315,764.95 as the cost of petitioner's mineral reserve in Mine No. 1 at January 10, 1918. It is agreed that subsequent additions and capital costs applicable to the ore reserves were incurred in 1918, 1919, and 1922 in the respective amounts of

$11,247.49, $48,522.15, and $10,000. The $10,000 expenditure in 1922 which occurred on September 2, was to secure a renewal of the lease. The expenditure having been made at the beginning of the fourth quarter of the year, only one-fourth of such amount should be added to the cost of the mineral reserve for 1922. Upon these facts the correct depletion deductions will be recomputed under Rule 50.

The parties agree that the petitioner's net taxable gain or net loss for each of the years 1921, 1922, and 1923 will depend upon the recomputation of depletion for those years. It is obvious that the agreed net income before deductions for depletion must be adjusted by the application thereto of the results of the recomputation of depletion on the cost basis above determined. If such adjustments result in net losses for 1921 and 1922, the provisions of section 204 of the Revenue Act of 1921 should be applied in determining the petitioner's tax liability.

It is agreed that depreciation was sustained by petitioner, exclusive of that on automobiles and office furniture, in the amount of $48,102.88. The respondent has allowed a deduction for depreciation, exclusive of amounts allowed on automobiles and office furniture, of $49,714.26. In recomputing the deficiency effect should be given to such overallowance.

*Decision will be entered under Rule 50.*